UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETHANY L.[1],

                Plaintiff,                Civil Action No. 24-10402

v.                                            Nancy G. Edmunds
                                              United States District Judge

COMMISSIONER OF                    David R. Grand
SOCIAL SECURITY,                    United States Magistrate Judge

                Defendant.
_____/

**REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 11, 14)**

Plaintiff Bethany L. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 11, 14), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act during the relevant time

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

period is not supported by substantial evidence. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 14)** be **DENIED**, Plaintiff's Motion for Summary Judgment **(ECF No. 11)** be **GRANTED** to the extent it seeks remand, and that pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

## II. REPORT

### A. Background

Plaintiff filed her application for SSI on August 6, 2021, and alleged a disability onset date of January 1, 2021, at which time she was 35 years old. (PageID.32, 186, 200).[2] At 5'2" tall, she weighed approximately 139 pounds during the relevant time period. (*Id.*, PageID.74). She completed education up to the eighth grade. (PageID.201). She lives temporarily with friends at their apartment and otherwise is "couch surfing." (PageID.217). She has no past work. (PageID.200). Plaintiff alleges a disabling condition of victim of domestic violence, hepatitis C, bipolar disorder, anxiety disorder, vision issues, torn retinas in both eyes, swelling ankles, ADHD, comprehension and memory loss issues, and seizures. (*Id.*).

After Plaintiff's application for SSI was denied at the initial level on June 7, 2022, and upon reconsideration on August 18, 2022 (PageID.80, 92), she timely requested an administrative hearing, which was held telephonically on February 7, 2023, before ALJ Jessica Hodgson (*Id.*, PageID.55-78). Plaintiff, who was represented by attorney Wesley

---

[2] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 7-1.

2

J. Lamey, testified at the hearing, as did vocational expert ("VE") Thomas A. Grzesik. (*Id.*). On April 24, 2023, the ALJ issued a written decision finding that Plaintiff was not disabled since the date of her application on August 6, 2021. (PageID.32-42). On December 21, 2023, the Appeals Council denied review. (PageID.23). Plaintiff timely filed for judicial review of the final decision. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, function and disability reports, and testimony as to her conditions and resulting limitations during the relevant time period. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.     The ALJ's Application of the Disability Framework Analysis**

Under the Act, SSI benefits are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without

3

> further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff is not disabled under the Act. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of her application on August 6, 2021. (PageID.34). At Step Two, the ALJ found that Plaintiff had the severe impairments of multilevel lower lumbar spondylitic changes, with moderate-severe narrowed intervertebral disc space L3/4, L4/5, endplate changes, and degenerative arthropathy; reactive airway disease; bipolar disorder II/mood disorder; anxiety disorder/panic disorder; ADHD; PTSD; and alcohol use/abuse disorder. (PageID.34-35). At Step Three, the ALJ

found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*, PageID.33-35).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations:

> [l]ifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting for up to a total of 6 hours out of an 8-hour workday, but must have the option to alternate to a standing position for 3 minutes after every 30 minutes of sitting; standing and/or walking are the combined total of 6 hours in an 8-hour workday, however, she must have the option to alternate to a seated position for 5 minutes after every 30 minutes of standing and/or walking, for any of this need-to-change position, the person is not going to be off-task or away from the work station, and this is optional; can climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, and crouch; never kneel or crawl; can never work at unprotected heights and never with moving mechanical parts; can perform simple, routine and repetitive tasks, but not at a production rate pace (e.g. assembly line work); and can have occasional interaction with supervisors and coworkers and never any interaction with the public.

(PageID.37).

At Step Four, the ALJ found that Plaintiff has no past relevant work. (PageID.41). At Step Five, the ALJ found, based in part on the VE's testimony, that given Plaintiff's age, education, work experience, and RFC, she was capable of performing unskilled light work as a mail clerk (12,000 jobs nationally), marking clerk (126,000 jobs), and collator operator (32,000 jobs). (PageID.41-42). Thus, the ALJ concluded that Plaintiff was not disabled under the Act. (*Id.*, PageID.42).

**C.     Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute

5

is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing

6

in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D. Analysis**

In her motion for summary judgment, Plaintiff raises one argument – that the ALJ failed to properly evaluate the opinion of consultative examiners ("CE") Kyle D. Wood, MS, LLP, and Barbara C. Weber, Ph.D. (ECF No. 11, pp. 16-25[3]).

Specifically, on May 21, 2022, Dr. Weber and Mr. Wood conducted a consultative examination of Plaintiff, and upon completion of testing, opined that: (1) in the area of understanding, remembering, and applying information, Plaintiff would have moderate limitations remembering locations, mild limitations following simple instructions, and marked limitations following complex instructions; (2) in concentration, persistence, and pace, Plaintiff would have mild limitations making simple work-related decisions, marked limitations carrying out detailed instructions, mild limitations making simple work-related decisions, marked limitations with attendance, and marked limitations working a full day without rest periods; (3) in social interaction, Plaintiff would have marked limitations dealing with the general public, marked limitations requesting assistance, marked

---

[3] For reasons unclear to the Court, Plaintiff's motion (ECF No. 11) does not populate the CM/ECF pagination headers. Accordingly, the Court will refer to the page numbers in the motion and brief at the bottom of the filing.

limitations responding to criticism, no limitations with socially acceptable behavior, and marked limitations asking for help when needed; and (4) in adapting and managing herself, Plaintiff would have marked limitations with changes in the work setting, marked limitations traveling to unfamiliar places or using public transportation, and no limitations setting realistic goals. (PageID.794).

    The ALJ found that this opinion was not persuasive, stating:

> I am not persuaded by the evaluating psychological consultant's medical opinion in Exhibit 14F. . . . The opinion is not supported by the consultant's own report. For 1 example, the consultant opined that she has "moderate limitations remembering locations," yet his report reflects that, during mental testing, the claimant named 5 large cities that are located throughout various States of the United States. Also, the consultant's opinion is not consistent with the other evidence in the record. The consultant opined that the claimant has many "marked" limitations and has "marked" limitations in all 4 areas of her Part B Criteria, yet a male had indicated that she has been his "caregiver", which she would not be able to do if she actually has marked limitations in all 4 areas of her Part B Criteria.

(PageID.40) (citations omitted).

    Based on the above, Plaintiff argues that the ALJ "fail[ed] to provide coherent explanations" as to her evaluation of the consultative examiners' opinion, and that the ALJ's "highly generalized statements do not meet the minimum standards of articulation." (ECF No. 11, pp. 17-18). The Commissioner responds that Plaintiff "fails to show any error in the ALJ's analysis." (ECF No. 14, PageID.1369-84). For the reasons detailed below, the Court finds that the ALJ's handling of the consultative examiners' opinion is not supported by substantial evidence.

    First, the ALJ determined that the CEs' opinion was not supported by their own

report, stating, as the only example, that Plaintiff's ability to name "5 large cities" "located" throughout the United States during mental testing was inconsistent with their opinion that she has "moderate limitations remembering locations." (PageID.40). Plaintiff argues that "the ALJ improperly used statements regarding general fund of knowledge to reject a limitation in ability to understand, remember, and apply information in a work setting." (ECF No. 15, p.3). The Court agrees.

While cities are "locations" in literal terms, Plaintiff's ability to simply *name* certain cities bears on her general fund of knowledge, it is not on an assessment of her limitations in "remembering locations" as it specifically relates to her ability to work. In other words, Plaintiff's ability to name five cities *as a general matter* is not a measure of her memory and ability to remember locations *as necessary for the specific performance of her work*. *See, e.g.*, *Debbra N. v. Comm'r of Soc. Sec.*, 2024 WL 3506949, *5 (S.D. Ohio July 23, 2024) (finding limitations in "short-term memory and remembering locations and work like procedures"); *Taylor v. Colvin*, 2016 WL 760399, at *6 (N.D. Ohio Feb. 26, 2016) (limitations in "remembering locations and work-like procedures"). Indeed, the CEs' report expressly states that, in assessing Plaintiff's "Sensorium and Mental Capacity," the CEs tested her performance in seven different categories (Orientation, Memory, Information, Calculation, Abstract Thinking, Similarities and Differences, and Judgment), and naming five large cities was an assessment merely of "Information," and not her "Memory" or "Orientation," as the ALJ's assessment seems to assume. (PageID.792-93).[4]

---

[4] To the extent the Commissioner argues that substantial evidence supports less than moderate limitations in remembering locations, that is the Commissioner's argument, and not the ALJ's

9

Second, the ALJ determined that "the consultant's opinion is not consistent with the other evidence in the record," explaining that although the CE "opined that [Plaintiff] has many 'marked' limitations and has 'marked' limitation in all 4 areas of her Part B Criteria," those findings were inconsistent with an emergency room treatment note indicating that Plaintiff had been a "caregiver" to a male, "which she would not be able to do if she actually has marked limitations in all 4 areas of her Part B Criteria." (PageID.40). In making that determination, the ALJ cites to a single treatment note from May 22, 2022, in which Plaintiff was taken to the emergency room for a seizure. (PageID.1205, 1242). The treatment note reflects that "EMS had received a call [from Plaintiff] for a lift assist on a male," but when EMS arrived on the scene, they instead found Plaintiff, "his caregiver," lying on the floor having a "seizure." (*Id.*). Plaintiff reported that she "drank 1-1/2 beers today and she is stressed out trying to take care of a family." (*Id.*).

Based on the above, Plaintiff argues that the ALJ's conclusion that Plaintiff was a

---

stated reason for finding the CEs opinion to be not persuasive. Moreover, the CEs' opinion that Plaintiff has "moderate limitations remembering locations" is not inconsistent with the ALJ's assessment of the paragraph B criteria, which expressly found that Plaintiff has a "moderate limitation" in "understanding, remembering, or applying information." (PageID.36). While the limitations identified in the ALJ's paragraph B criteria are not an RFC assessment, where the ALJ herself expressly identified moderate limitations in the paragraph B criteria, but then found that the CEs' similar opinion of moderate limitations in that area was unpersuasive and ultimately did not include such limitations in the RFC, at a minimum, the ALJ was required to articulate a logical bridge and coherent rationale for reaching that conclusion. *See, e.g.*, *Farahani v. Comm'r of Soc. Sec.*, 2022 WL 3216407, at *14 (E.D. Mich. June 15, 2022) ("most courts hold that where an ALJ finds even mild limitations in concentration at step two, the ALJ must either incorporate this finding into his or her RFC or explain why these mild deficits do not translate into functional limitations."), *report and recommendation adopted at* 2022 WL 2872226 (E.D. Mich. July 21, 2022); *Rodriguez v. Comm'r of Soc. Sec.*, No. 20-CV-13372, 2022 WL 4359541, at *3 (E.D. Mich. Sept. 20, 2022) ("identifying [mental] impairments as mild is no substitute for explaining why the RFC did not include any limitations stemming from the impairments.").

caregiver "is a mischaracterization of the emergency room treatment note," and that the treatment note "actually support[s] the consultative examiner's opinion of marked limitations, especially in managing stress . . ." (ECF No. 11, pp.22-23). The Commissioner responds that the treatment note clearly described Plaintiff as the male's "caregiver," and so Plaintiff "fails to show that the ALJ mischaracterized the record." (ECF No. 14, PageID.1379-80). After careful review, the Court cannot say that the ALJ's stated reasons are supported by substantial evidence.

The ALJ concluded that the CEs' opinion of marked limitations in her paragraph B criteria was not persuasive because, with those limitations, Plaintiff could not have functioned as a "caregiver" to "a male" as referenced in the May 2022 emergency treatment note. (PageID.40). But such conclusion appears to presume that Plaintiff provided substantial and ongoing care for the person's daily needs, as the ALJ noted at Step One that "[s]ince the application date, the claimant has apparently been the caretaker for a male." (PageID.34). However, the ALJ failed to recognize that Plaintiff's function report suggests she actually provided quite *limited* "care" to a male "friend." Specifically, Plaintiff's function report states that she "cares" for a "Lenny Cobb ***just as a friend***" because her friend "has MS [multiple sclerosis]," and that the extent of her care is limited to helping him with "lunch" or "dinner" when "meals & wheels don't come," and "help[ing] [to] the best of [her] ability [to] get him into the shower on his shower chair."

11

(PageID.218) (emphasis added).⁵ In other words, it is not at all clear that Plaintiff provided the level of care the ALJ seems to have assumed she provided.

Nor is it necessarily inconsistent for Plaintiff to provide the sort of limited and occasional care she reported for a friend, yet still experience various marked limitations, including, for example, in the following areas within the four Paragraph B criteria as found by the CEs: "following complex instructions" (understanding, remembering, and applying information); "carrying out detailed instructions," "sustaining a routine," "attendance," and "working a full day without rest periods" (concentration, persistence, and pace); "requesting assistance," "responding to criticism, and "asking for help when needed" (social interaction); and "changes in the work setting" and "traveling to unfamiliar places or using public transportation" (adapting and managing oneself). (PageID.794). The ALJ's decision fails to specify which, if any, of these opined marked limitations she found to be inconsistent with Plaintiff's limited care of her friend. (PageID.34). These are all issues which the ALJ should meaningfully evaluate against the record evidence in the first instance.

Moreover, as Plaintiff argues in her motion, the May 2022 emergency treatment note actually provides some support for marked limitations as opined by the CEs. Specifically, the treatment note documents that Plaintiff reported she was "stressed out" trying to take care of others and that she suffered a "seizure" while trying to call EMS for

---

⁵ The Court notes that Plaintiff was not asked about this "caregiver" role at the hearing before the ALJ, but she did testify, "my poor dad, he's a retired nurse and he helps me, you know. . . . Should be the other way around." (PageID.68).

a "lift assist on a male" as a "caregiver." (PageID.1205). This is consistent with the CEs' report that "[t]he claimant reported that stress and trauma induce her seizures." (PageID.789). In other words, both the May 2022 treatment note and the CEs' report indicate that stress can cause Plaintiff to suffer from seizures, and it would then follow that Plaintiff may be significantly limited in work activities that could cause her stress, such as "following complex instructions," "attendance," "working a full day without rest periods," "responding to criticism," "changes in the work setting," and "traveling to unfamiliar places or using public transportation." (PageID.794); *see* SSR 81-15 ("Determining whether these individuals will be able to adapt to the demands or 'stress' of the workplace is often extremely difficult. . . . . The reaction to the demands of work (stress) is highly individualized . . . ").

While the ALJ recognized that Plaintiff "admitted to being stressed out from taking care of a male" (PageID.38), the ALJ failed to address the evidence connecting Plaintiff's stress to her seizures, and how that might affect Plaintiff's ability to adapt to the demands or "stress" of the workplace. At a minimum, the ALJ's stated reasons are insufficient for this Court to meaningfully review and assess whether the ALJ's determination is based on substantial evidence in the record as a whole, as opposed to a selective and/or incomplete reading of the record. *See Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 907-09 (E.D. Mich. 2021) (stating that where the ALJ's summary of the record "included both supportive and contradictory information, it does little to explain the ALJ's reasoning or to provide sufficient rationale for a revieing adjudicator or court," and "a substantiality of evidence evaluation does not permit a selective reading of the record"). (quotations

omitted).

Finally, as Plaintiff points out, it is worth noting that the ALJ relied on portions of the CEs' consultative exam to conclude that the state agency psychological consultants' opinions were only "partially persuasive" and to assess more restrictive limitations. Specifically, the ALJ stated that:

> I am partially persuaded by the State Agency psychological consultants' prior administrative medical findings in Exhibits 2A and 4A in regards to the claimant's overall mental health. They opined that the claimant has moderate limitations in all of her mental functional domains and specified the mental limitations as: Clmt retains the ability to perform simple tasks on a sustained basis w/ occasional public contact. The degrees are supported by the claimant's mental diagnoses and treatments, but the exact limitations are not, as the claimant has reported of [sic] her limited interaction with others and how she does not like being around groups of people (14F) [(CE's report stating, "The claimant reported that she tends to keep to herself and her family. . . . The claimant indicated that she doesn't like being around groups of people.") (PageID.792)]. Also, the degrees are consistent with the other evidence in the record, yet the exact limitations are not, as the claimant testified at the hearing about her mood, flashbacks, and other mental symptoms (Hearing Testimony), which would affect her interactions with various people.

(PageID.40).

The ALJ's analysis reflects that she considered certain of Plaintiff's reported complaints in the CEs' report and relied on those complaints as a basis to assess greater limitations than those opined by the state agency consultants. But, at the same time, the ALJ did not address Plaintiff's many reported complaints documented in the CEs' report that support the CEs' opinion, such as complaints that "she has had memory issues since the [car] accident in 2010," "she has a difficult time with short and long-term memory," "she has seizures," "stress and trauma induce her seizures," "she is manic," "she has racing

14

thoughts which cause her to stay up all night at times," "she tends to get very paranoid," "she gets depressed," "when depressed, she tends to cry about everything," "she can [remain] in a depressed state for a long time," "she often feels helpless, hopeless, and worthless," "she feels like she can't do anything," "she tends to isolate and withdraw from people," "she has a lack of energy and a lack of motivation when she is depressed," "she has flashbacks and memories of her past abuse," "she also has flashbacks when people are aggressive toward her," "she tends to worry all the time about almost everything," "her mind will race at times," "she has panic attacks," and she has significant symptoms of "Inattention," "Hyperactivity," and "Impulsivity." (PageID.789-91). While the ALJ is not required to accept Plaintiff's own statements as to her symptoms, the ALJ "has the obligation in the first instance to show his or her work," particularly when the ALJ used and relied on certain of Plaintiff's own statements in that same report to find that the opinions of other medical sources were only partially persuasive. *James A. M. v. Comm'r of Soc. Sec.*, No. 22-12334, 2024 WL 1224402, at *3 (E.D. Mich. Mar. 21, 2024).[6]

---

[6] To the extent that the Commissioner argues that "a review of the record shows additional evidence that stands in conflict with the consultative examiners' marked limitations" (PageID.1377), the existence of substantial evidence alone does not excuse the ALJ's failure to provide a sufficient rationale for the reviewing court to assess. *See Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 907-08 (E.D. Mich. 2021) ("Both the Commissioner and the magistrate judge described other evidence in the administrative record that could furnish substantial evidence for a nondisability finding and support for rejecting the physician's opinions. The Commissioner . . . outlines a theoretical path that the ALJ could have followed had she properly applied the regulations requiring that she 'explain how [she] considered the supportability and consistency factors for a medical source's opinions.' That reasoning, however, ignores the mandate of the regulations that guarantees claimants a certain level of process that cannot be discounted by the substantial evidence test alone. Even if the Court 'were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse

In sum, the ALJ's stated reasons for finding the CEs' opinions not persuasive reflect an incomplete evaluation of the record as a whole. While the Court expresses no view on

---

non-compliance with [the regulations] as harmless error." ). Notably, the Commissioner does not raise any arguments concerning harmless error.

In any case, while the record does contain evidence of normal mental status exam findings that works against Plaintiff (*see, e.g.*, PageID.433-34, 525-36, 1135), it also contains significant evidence of her mental health impairments and limitations that could carry the day. (*See, e.g.*, PageID.461 (June 2021 screening indicating severe major depressions and severe anxiety, and presenting with anxious mood and labile affect); PageID.456 (September 2021 treatment note finding Plaintiff was "anxious" and "not interested in conversation today," with an "anxious" mood and "fidgeting during conversation often."); PageID.421-24 (October 2021 behavioral assessment indicating severe major depression and severe anxiety, tearful, negativistic, and hostile behavior, slow, rambling, and incoherent speech, incoherent and derailed thought processes, and anxious, manic, and irritable affect); PageID.449 (October 2021 mental exam indicating anxious mood and "fidgeting/shaking during conversation often"); PageID.1130 (August 2022 behavioral assessment indicating Plaintiff "presented agitated throughout session" and "continues to get agitated at appts with providers"); PageID.1134 (August 2022 treatment note finding Plaintiff "presented to be out of it eg: eyes rolling in the back of her head," "presented emotional and manic in session," "could not remember what she was saying or finish sentences," and "shows interest in working on therapeutic goals however pt struggles with focusing on the task at hand"); PageID.1137 (September 2022 note finding Plaintiff "presented argumentative throughout hour session," "won[']t communicate in a friendly manner," "is argumentative and defensive," "presented on edge and she could not focus on anything besides medication," and "shows interest in working on therapeutic goals however pt struggles."); PageID.1147 (November 2022 note indicating Plaintiff was "late for session, groomed, prepared and oriented," "presented emotional and she was communicative" and "shows interest in working on therapeutic goals however pt is struggling with her living situation."). On remand, the ALJ should more fully evaluate this and the other salient record evidence in evaluating the CE opinion's persuasiveness.

Moreover, the Court notes the relative importance of this issue to the ultimate determination of Plaintiff's claim; the VE testified that adding limitations of either no contact with co-workers, being off task for 20 percent or more of the workday, or missing two or more days of work per month would preclude all work (PageID.76-77), so the CEs' opinion that Plaintiff has marked limitations with, for example, attendance, working a full day without rest periods, requesting assistance, responding to criticism, or asking for help when needed could potentially preclude all work and result in a finding that she is disabled and entitled to an award of benefits.

16

whether the ALJ might supportably reach the same conclusion on remand, the explanation provided to Plaintiff "is too sparse to allow meaningful, judicial review." *Tina P. v. Comm'r of Soc. Sec.*, 2024 WL 1660527, at *14 (E.D. Mich. Apr. 17, 2024). Accordingly, the case should be remanded.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 14)** be **DENIED**, Plaintiff's Motion for Summary Judgment **(ECF No. 11)** be **GRANTED** to the extent it seeks remand, and that pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

Dated: January 10, 2025  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some

objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 10, 2025.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager